May it please the Court, my name is Susan E. Hill and I represent the petitioner Mr. Romero. Mr. Romero was a lawful permanent resident. His status was strict in removal proceedings due to a criminal conviction that he obtained. That criminal conviction has since been vacated. It no longer exists and it no longer supports the underlying removal order. However, Mr. Romero has been unable to have his basic claim heard by the Board of Immigration Appeals or the Immigration Courts. His basic claim is that, of course, there is no underpinning for his removal. He wants to have that redressed. He's applied to the Board of Immigration Appeals but it has refused to hear his case and it's raised on jurisdictional and procedural bars. He has, as I said, a very fundamental claim. This Court and the BIA have recognized that there are exceptions to these procedural bars to having a case reopened and heard. For instance, this Court in the Vitersburg case has held that, let me get the language, the jurisdictional bars only apply for or do not apply where there has been an unlawfully executed deportation order, such as where a criminal conviction has been vacated and no longer supports that order. In the Estrada Rosales case, the same thing existed. There were procedural bars that were raised and those were set aside because the criminal conviction no longer existed and it was determined that the Petitioner had the right to have that considered. In Ramirez-Juarez, it was referenced as a gross miscarriage of justice. Again, it's the policies of justice considerations and that person was allowed to collaterally attack, I believe, a removal order that was already in place. Cardoso-Tlaseka v. Gonzalez, it determined that whether a conviction has been vacated or not, the BIA must consider that. It is a factual issue that the BIA should consider. Other instances where interests of justice have made this Court set aside any kind of jurisdictional or procedural bars have been, for instance, ineffective assistance of counsel, where there's been an acknowledged due process violation and prejudice. Obviously, Mr. … Do we have a timeliness problem here? That is one of the bars that I am referencing, Your Honor. There has been a departure bar that has been applied and also a timeliness issue. Well, I understand about the departure bar, but timeliness is a different animal altogether. Timeliness is one of the bars, but we contend that that does not foreclose him from having his due process concerns heard. Let's assume for a moment that the departure bar doesn't apply and the BIA did have jurisdiction. The BIA says, we decline to reopen Suspante. I mean, the BIA clearly has the power to do so. We're outside the time period and so on. How do you get past that? Yes, Your Honor, that's the Akeemian case, which I know you are familiar with. Yeah, the worst day's work I never did in my life. The Suespante power is in the regulations, and again, that is a power that the Board has been given. Suespante has been defined for exceptional circumstances, and this Court and Akeemian determined that the concept of exceptional circumstances has not been well enough defined, either in the statutes or the regulations or in case law, for this Court to apply a standard and review it. However, here, it's not just a consideration of discretion that we're talking about. This is a basic fundamental due process issue of whether or not these removal laws even apply to Mr. Romero. He has been unable to find a forum in which to raise this very basic concept. Moreover, whether or not they... You say he's claiming. Give it to me again what the violation of due process is. The fact that there's a question of whether or not the removal laws even apply to him, and in order for him to be heard on the issue of whether or not... And they don't, might not apply to him because... Because the conviction that was the formulation for his removal has no longer, it does not exist any longer. But he was appropriately removed when he was removed. When he was removed, yes, but there have been acknowledgments that facts change, and the case law has never had trouble considering that a post-removal vacatur has come into existence. That's never been an issue before in any of the precedent that I have reviewed. As for the... Do you have any cases that say not just that the BIA can change its mind and allow somebody back in in the light of a vacatur of a criminal conviction, but that the BIA must do so? There has been an instance where the BIA itself set aside a jurisdictional bar. This was the departure bar, and that's the matter of Bolnitz case that was cited in our brief. And there the BIA looked at the statute, and this was an in absentia order, and determined that because there was a statutory right for a person to challenge the in absentia order, that the departure bar could not be applied. And even though the departure bar argued they stripped the BIA of jurisdiction to hear the case, it nonetheless determined that the statutory rights trumped that departure bar and reopened the matter and allowed the person back in to hear the matter. Here, Mr. Romero has a statutory right to fight whether or not the removal laws even do apply to him, whether he is removable or not. It is the government's burden of proof to establish whether or not he is removable. It's the government's burden of proof to establish whether or not this vacatur was obtained for rehabilitative purposes or not. That's by virtue of this Court's case in Nath. And this is all very statutory. He has statutory rights to have these determinations made in his case. This isn't a matter of discretion. This is something that is very concrete that this Court and the BIA have recognized. Due process rights exist. Interests of justice exist. And he does have the statutory right to have this fight. You know, you're sliding back and forth between constitutional right and statutory right. You say statutory right, but then that turns into due process. I'm not sure I get how we can move from statutory right to constitutional right so easily. I would say that they're both involved. He has a constitutional right to fundamental fairness, the fundamental fairness of determining whether or not these removal laws even do apply to him. Also, there is a statutory right given to him to challenge when he is placed into removal proceedings and to fight his deportability and his removable or whether he has any relief from removal. Going back to the Swiss-Fonsi. He could have filed a timely petition. And why isn't that all a due process that's required? I mean, it's not like he never had a chance to file something that would have invoked the Board's jurisdiction. He just did it late. Are you talking about in the criminal court, Your Honor? No, I'm talking about here. The BIA. The BIA. The BIA order occurred in 2006, and he was removed. And then he did not attain the vacateur until 2008. He actually was paroled into the U.S. by the government to fight the vacateur order and to attain it. Well, no, I understand that he had no basis for invoking the Board's jurisdiction, but he could have done it and tried to hold the case in abeyance. But there's no guarantee. There's no due process guarantee that he will have a review of the BIA whenever his situation changes. The agency is entitled to act on the facts as they exist, and then he has a certain period, as a matter of statutory law and due process, to petition for a review of that. He didn't do that, right? No, he did not continue fighting before existence of the vacateur order. But it can be argued that his claim did not arise until he actually did obtain that vacateur order. If he had continued fighting, one could speculate what he would have raised and what kind of arguments. But the fact of the matter is, here, he didn't have a basis to challenge his view. It's perfectly understandable, but it's hard to argue that that's a due process violation. In any event, you've got about a minute left. Do you want to say that? Yes, thank you. We'll hear from the government. All right. If I may please the Court. I'm Stuart Nickham on behalf of the Respondent, the Attorney General. The petition for review in this case should be dismissed as the Court does lack jurisdiction to review that discretionary determination to deny soliciting a reopening. I think that the Court can dismiss the case without really addressing the validity of the departure bar because the sui sponte reopening authority, again, the Court lacks jurisdiction to review that. As to the question of statutory or constitutional right being violated here, there is no statutory right to file an untimely motion to reopen. The right to file a motion to reopen expires 90 days after the order of removal has been entered. Subject to certain specific exceptions, that statutory right, again, it expires after 90 days. The petitioner here was seeking to reopen proceedings sui sponte. And so, again, there is no statutory right to even file a motion to reopen in this context. It's entirely a discretionary right provided by the Board to file a motion to reopen in these particular circumstances. I think that is of critical importance in terms of distinguishing this case from Widersburg or Cardozo-Lusaka. It's the discretionary nature of the right being provided, not really a right, but the discretionary authority of the Board. It has the discretion to make the determination as to what constitutes exceptional circumstances that warrant reopening. Here, the petitioner was ordered removed. You can see that the removal order was proper at the time it was entered. And the petitioner was ordered or was removed to proceed to a valid removal order. He is now seeking, after having been removed from the United States, to overturn that removal order. And in that context, the fact that he essentially submitted an ambiguous record didn't submit evidence as to the reason for the vacature. The Board can certainly look at that as in terms of applying its discretionary authority to decide whether or not to reopen the case. Let me ask you this. Assume, and I'm putting into this case things that require some assumption, so I'm not asking you to concede. Assume that his criminal conviction is set aside by the state court on grounds of innocence. State court says, sorry, there was simply no evidence to support that. That's not quite what happened here. But let's assume that it was set aside on that ground. And assume further that the BIA sua sponte grants the motion to reopen. Would, at that point, the BIA be required to set aside the removal order? Assuming that the Board would grant the motion to reopen. Yes. Assuming sua sponte that the Board grants the motion to reopen, if the Board is now looking at the question on the merits, the criminal conviction has been set aside on the ground that there was insufficient evidence to support it, and he's therefore innocent. Would the Board be required to set aside the earlier entered removal order? I don't believe it would be required to. Because? Well, essentially, unreviewable discretion is discretion. I certainly believe that the Board would. Now, it's exercised its discretion to reopen. So that's taken care of. The question now has the question directly in front of it. What does it do with the earlier entered removal order, now that it knows that the conviction was erroneously entered? I sort of don't wish to speak for the Board, but I can't give you a reason why the Board would not be required to do so. It would not be required to reopen. If that's so, then, we're really between a rock and a hard spot. Because it seems to me that it's hard to apply a chemion to say there's no requirement to reopen to esponte when we know that the Board would be required to set it aside if it were to reopen. Well, again, I think the distinction is that there is no statutory right to reopening. The reopening is, in this context, entirely within the discretion of the Board. And the Board's decision, first of all, in terms of applying its discretion as to what it requires. But if that's what a chemion means, that means that the Board can evade the clear requirement of the law. That is to say, the substantive law is that if the conviction has been set aside because it had no foundation in fact, the removal order is no longer valid. I'm sorry. If it were to decide to reopen, then, yes, I think that's correct. But here, again, the decision as to whether or not to reopen the case is discretionary. And in that context... But that's kind of absurd. That is to say, you just conceded, maybe you want to back away from it, but you just conceded that he has an absolute right to have it set to one side if the Board addresses the merits. But you're saying the Board doesn't have to address the merits. Yes. Well, you may want to back away from it. My concern was he doesn't think of any reason why the Board wouldn't. No, you know, you didn't quite say that. But you can back away if you like. Well, it's an interpretation that I certainly would back away from that. But, again, I think in that context, where the Board does have discretion that is broad, it can always... We're considering a case where there's an actual determination of actual innocence by the State. Which is not this case. Which is not this case.  I believe that in that type of case... And there's nothing presented to the Board here that would suggest that was the case. Correct. I will call into question whether, you know, an innocent person has been convicted. There's nothing like that here, right? Correct. Correct. And I believe that were a situation like what you're describing were to arise, again, I can't speak for the Board, but I would certainly imagine that they would, in the exercise of their discretion, absolutely reopen the case. I mean, if a petition were to establish actual innocence, I would suspect that that would be a very strong consideration for warranting civil spawn to reopen it. Again, I can't speak for the Board, but in that type of case, the Board certainly could reopen it. Is there anything in the record as to why the rape conviction or attempted rape was set aside? I wouldn't say there's anything conclusive. There are some indications in the briefs that were filed with the Board, but they don't really give a clear answer. I think page 37 of the administrative record, the affidavit from the petitioner, states that in August 2008, because the facts of my case did not warrant a conviction for attempted spousal rape, the criminal court judge agreed to reconsider my conviction. But then in the letter between two of his attorneys, and this is on page 73 of the record, states that essentially the petitioner was ordered to register with his probation officer as a sex offender, didn't realize that that was going to be the case, and that, quote, So it's not really clear what the fundamental basis was. Certainly there were no documents in the record that would show what the basis of the vacation was. And again, I think it's particularly relevant here where a petitioner who has been removed pursuant to what was certainly at the time a legitimate order of removal, a lawful order of removal, is seeking to say, no, that was unlawful, it is the petitioner's obligation to present evidence that, in fact, it was unlawful. And I think in cases like, you know, Winersburg certainly didn't establish a burden of proof as to who bears the burden. There is, of course, a decision in the MAF case that does say that the government bears the burden of proof in motions to reopen to establish that a conviction is still valid. That's in the context of a timely filed motion to reopen. Again, here we're outside of that context. And so when we're looking at the board's decision as to whether or not to exercise its discretion to reopen the case of Lisbonte, it doesn't need to say, to apply the same burden of proof rules. That an alien who has been ordered to move pursuant to a legitimate order, subsequently seeking to show that that was unlawful, that the alien must submit evidence sufficient to establish that the order of removal is unlawful. Thank you. Zero minutes left. A minute and a few seconds. Thank you, Your Honor. Judge Fletcher, as you noticed, there is no discretion here. It's whether or not the conviction was vacated for rehabilitative purposes or not. Mr. Romero is not required to demonstrate that at the time of reopening. He's just required to demonstrate that there are new facts that the Court should consider. And in this case, when he does demonstrate this new fact of the vacate order, it becomes the government's burden to establish that that new conviction has been obtained for improper purposes and that he still remains deportable. Where do you get that? I'm sorry? Where do I get that? Where do you get that? That it is the government's burden to establish, Your Honor? That he is entitled to reopening. I mean, this is what you started saying. He's entitled to reopening to show new facts. Where do you get that? This is under the reopening statute. And if I understand your question, Your Honor, we're talking about whether or not the procedural bar to the reopening statute applies here. And then it was raised whether or not this was a discretionary determination that was properly left to the BIA under its soixante authority. And we're contending that, no, this was not a discretionary determination that was appropriate for unreviewable soixante authority. And what do you base that on? The fact that this is based on the statute of whether or not he remains removable, deportable under the criminal conviction, and that is the government's burden to establish. No, I understand the argument. What provision are you or case are you relying on for this? The NAAF case establishes that the government's burden of proof is to establish deportability and the ---- But they did establish deportability. They established deportability based on a conviction that's no longer in existence. Well, but they did. And we're now no longer at the point of having to establish deportability or removability, whatever they call it now. We're now at the point of reopening the proceedings to reconsider. And where do you get this? I mean, you claim that there is no discretion. This is a mandatory duty on the board, part of the board, to reopen. I'm just wondering where you get that. If I understand Your Honor, that's because under the procedural laws, the only potentially relevant provision that Mr. Romero could proceed under was the sui sponte authority. And that's what he was forced to proceed under. Right. And that's discretionary. It is discretionary as determined by the Achemian decision. However, we argue that this is an exception to that concept. Based on what? Based on the fact that ---- On what do you argue that there's an exception? What authority do you have for that? It's the basic concepts that I cited already of interest of justice and the fact that he no longer remains convicted of the underlying offense. And he has the right to challenge, given to him by statute, the ---- You don't cite a regulation. I'm sorry? You don't have a regulation you cite or a statute or a case. Yes, Your Honor. He has the right. Well, it begins with section under U.S. Code 1229A that governs the removal proceedings. And it sets forth ---- Well, we're not in the removal stage. We're now in the reopening stage. And you say this is something that the board has is mandatory. Our case law and regulations say this is discretionary. You say, no, there's an exception. And I'm just wondering where you get the authority for this exception. Are you just making it up? I mean, this is fine if you want us to sort of create this doctrine here. But do you have any authority for it? I'm arguing that because the concept of determining deportability in the first instance and because the facts that supported his initial deportability order no longer are in existence, that removes this from the unfettered discretion that is granted to the BIA for purposes of this Court reviewing a denial of a motion to reopen. Okay. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Kozinski, Reinhardt, Fletcher